Filed 6/26/24  In re H.M. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re H.M., a Person Coming Under the Juvenile Court Law. | B331520 (Los Angeles County Super. Ct. No. 23CCJP01394) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JAVIER D.,<br><br>　　　Defendant and Appellant. | |

　　　APPEAL from the jurisdictional and dispositional orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

　　　Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

H.M.'s presumed father, Javier D. (father), appeals from the juvenile court's jurisdictional and dispositional orders by challenging the sufficiency of the evidence to support some of those orders.  H.M. is father's fourth child.  In previous dependency cases, father lost custody of his other three children in part because of his history of substance abuse and refusal to complete court ordered substance abuse programs during the reunification periods in those cases.

In this case, father does not contend the juvenile court erred in exercising dependency jurisdiction based on mother's prior acts of violence in the presence of another of her children but nevertheless requests review for substantial evidence of the juvenile court's findings that he has a history of substance abuse and failed to protect H.M. from mother's substance abuse.  He further argues that absent these findings, he would have been "non-offending."  Father asserts these findings also influenced the juvenile court's dispositional orders insofar as the court removed H.M. from his custody and ordered him to attend a substance abuse program.  We decline to exercise our discretion to consider the jurisdictional findings father does challenge when it is undisputed the juvenile court properly assumed jurisdiction over H.M. based on mother's conduct, and because even absent the challenged findings, the record supports the dispositional orders.

We reject father's challenge to the dispositional order removing H.M. from his custody; substantial evidence supports

2

that disposition. Finally, we conclude father's request we remand this matter to the juvenile court for further inquiry into H.M.'s potential Indian ancestry is moot because the juvenile court has already issued an order requiring that inquiry.

We affirm the juvenile court's jurisdictional and dispositional orders.

## BACKGROUND

H.M., mother's third child and father's fourth child, was detained at birth and placed in a foster home. We first describe the proceedings involving H.M.'s half sibling and siblings. We then turn to the current case.

1. ***The juvenile court terminated father's parental rights over H.M.'s half sibling, Daniel D.***

In 2016, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition alleging, among other conduct, that father had a current and past history of substance abuse that put Daniel D. at risk of harm. (*In re Daniel D.* (Aug. 3, 2017, B280440) [nonpub. opn.].) Father pleaded no contest to allegations he had a then-current and history of substance abuse, including marijuana and methamphetamine, and father's substance abuse placed Daniel at risk of serious physical harm. (*Ibid.*) The juvenile court ordered father to participate in drug and alcohol services, parenting classes, and individual counseling. (*Ibid.*) Father did not reunify with Daniel. The juvenile court terminated reunification services after father failed to participate in court ordered programs. In 2018, the juvenile court terminated father's parental rights over Daniel D.

3

**2.**     ***The juvenile court terminated mother's and father's parental rights over H.M.'s siblings, K.M. and J.D.***

In 2020 and 2021, DCFS filed separate cases, one involving K.M. and the other J.D. In both cases, the juvenile court sustained the following allegation with respect to father: Father "has a history of substance abuse, including marijuana and methamphetamines, and . . . is a current abuser of marijuana, which renders the father incapable of providing regular care . . . ."

In addition to these, the court sustained allegations involving mother. The court sustained the allegation mother exposed K.M. to violent altercations with maternal grandmother on "numerous" occasions. Further, mother threatened to kill maternal grandmother's male companion in the presence of K.M. The court also sustained the allegation that mother's violence placed J.D. and K.M. at risk of serious physical harm. The juvenile court also found mother has mental and emotional problems, including homicidal ideation, suicidal ideation, adjustment disorder, a moderate intellectual disability, and epileptic seizures, which endanger J.D.'s and K.M.'s physical health and safety. Finally, the court sustained allegations mother had a history of illegal drug use and currently abused marijuana and benzodiazepine rendering her incapable of providing care to J.D. and K.M.

The court declared K.M. and J.D. dependents of the court. Father missed numerous drug tests during the reunification period. On November 7, 2022, the court terminated mother's and father's parental rights over the children.

### 3.  *The current proceedings*

#### a.  *Petition*

In a petition filed April 25, 2023, DCFS alleged the following under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).  Mother has a history of substance abuse rendering her incapable of providing H.M. with regular care.  Father knew of mother's substance abuse and failed to protect H.M.  H.M.'s siblings were dependents of the juvenile court due to mother's substance abuse and father's failure to protect them.  Mother has mental and emotional problems, including homicidal ideation, suicidal ideation, moderate intellectual disability, and epileptic seizures.  Mother threatened to kill an unidentified male in the presence of H.M.'s sibling and mother threatened to kill herself in the presence of H.M.'s sibling.  Mother's moderate intellectual disability prevents mother from providing regular care to H.M.  Father has a history of abusing marijuana and methamphetamine and currently abused marijuana rendering him incapable of providing regular care for the children.  Father was convicted of possession of a controlled substance and his substance abuse places the children at risk of harm.  DCFS also alleged under section 300, subdivision (j) that mother exposed K.M. to violent altercations with K.M.'s maternal grandmother and threatened to kill maternal grandmother's male companion in K.M.'s presence.  Mother's violent conduct would endanger H.M.'s safety.

#### b.  *Information in DCFS's reports*

Mother and father were homeless.  Although mother was eligible to live at the Regional Center, she chose to live on the streets with father.  Mother suffered from epilepsy and a

5

moderate intellectual disability.  Mother could not manage her daily needs without assistance.  Mother's verbal comprehension and perceptual reasoning were "extremely" low and her cognitive ability was moderately deficient.  During an interview with a social worker, mother was unable to remember her name.  A representative of the Regional Center indicated the Regional Center had been working with mother and father for several years, but both consistently failed to follow through with referrals.

Father was convicted of attempted murder in 1997 and possession of a controlled substance in 2018.  Father described the attempted murder as follows:  He "was walking and some individuals were giving him trouble.  He stated they approached him aggressively and stated, 'Fuck Mexicans!'  Father claimed he needed to respond and began to shoot them."  (Boldface omitted.)

When interviewed by a social worker (on an unspecified date), father admitted smoking marijuana, but indicated he had not done so in two weeks because he was seeking employment.  Father admitted to a history of smoking methamphetamine "several years ago" and possession of methamphetamine at the time of H.M.'s detention.  (Boldface omitted.)  In a subsequent interview, father denied ever using methamphetamine.

Father admitted another child (Daniel) was removed from his custody, but he believed it was "the mother's fault."  (Boldface omitted.)  Father admitted he served 14 years in prison for attempted murder.  Father refused to test for controlled substances unless the court ordered testing.

The court had ordered mother and father to have nine hours visitation per week.  Father stated that he " 'barely has

time' " for the visits. Mother and father refused to sign a visitation schedule prepared by the social worker. Mother and father visited two hours a week and declined additional visiting time. They reported they wanted to secure housing prior to having additional visits.

Mother tested for controlled substances three times during her pregnancy with H.M.; these tests were negative. Mother's obstetrician reported mother attended her scheduled appointments and mother and father showed "devotion to turn things around in their lives, for themselves and ultimately for their newborn daughter [H.M.]." There is no indication that mother's obstetrician was aware of mother's and father's prior dependency cases or the allegations in the current case.

After the jurisdictional hearing and in advance of the dispositional hearing, father tested one time for controlled substances. That test was negative.

### c. *The juvenile court sustains the petition and orders H.M. removed from mother's and father's custody*

The juvenile court sustained the petition "as plead" [*sic*], finding H.M. a dependent of the juvenile court.

Neither mother nor father appeared at the dispositional hearing. The court asked father's counsel why father was not present to which counsel responded, "I personally do not know." Father's counsel requested a case plan that included "parenting classes, Narcotics Anonymous, a drug program, and random drug testing." Counsel later requested, "I would just ask that it just be the drug program, 12-step, parenting and the random weekly testing and nothing else." Father's counsel stated father was seeking employment.

7

The court ordered no reunification services for mother. The court ordered reunification services for father and explained, "It is going to be very challenging for him to demonstrate to the court in six months that the child can be returned to him, but at least he's making some efforts now. He has tested negative, and he's trying to get housing and a job." The court ordered father to participate in counseling, a full drug and alcohol treatment, on-demand drug testing, and a 12-step program.

The court found by clear and convincing evidence that it was necessary to remove H.M. from mother's and father's care, and there were no reasonable means to protect H.M. if she remained in mother's and father's custody. The court described mother and father's relationship as "codependency." Father appealed from the jurisdictional and dispositional orders. Mother did not appeal.

## DISCUSSION

### A.    Father Does Not Challenge the Juvenile Court's Assumption of Jurisdiction Over H.M. Based on Mother's Conduct and We Decline To Consider Father's Challenge Only to the Findings Against Him

Father does not argue the juvenile court erred in exercising dependency jurisdiction over H.M. He does not challenge jurisdictional findings that mother's mental and emotional problems, "moderate" intellectual disability, and past violent conduct toward maternal grandmother and maternal grandmother's male companion in the presence of H.M.'s older sibling, K.M., placed H.M. at substantial risk of suffering serious physical harm. He challenges only the jurisdictional findings he abused substances and failed to protect H.M. from mother's

8

substance abuse.  Father also argues his past substance abuse does not present a current risk to H.M.  More specifically, he contends, "If a substance abuse history alone was a sufficient basis for dependency jurisdiction, there would be no point in rehabilitation or reunification services as one's children could be later removed solely on the basis of the history of previous substance abuse."  Father, however, identifies no evidence he was rehabilitated after the juvenile court sustained substance abuse findings dating back to 2016, and the record shows he did not successfully complete ordered reunification services in his prior cases, including participation in substance abuse programs.

To repeat, father does not dispute that the juvenile court properly assumed jurisdiction over H.M. based on mother's conduct.  "As a result of this focus on the child, it is necessary only for the [juvenile] court to find that one parent's conduct has created circumstances triggering [Welfare and Institutions Code] section 300 for the court to assert jurisdiction over the child. [Citations.]  . . .  For jurisdictional purposes, it is irrelevant which parent created those circumstances.  A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established.  [Citation.]  As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both. . . . " ' [Citation.]  For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence.  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491–1492; see also *In re Briana V.* (2015) 236 Cal.App.4th 297, 308.)

Father argues we should nonetheless review the jurisdictional findings regarding his substance abuse and failure to protect against mother's substance abuse because those findings affected the juvenile court's disposition. He reasons that absent the jurisdictional findings regarding his substance abuse and failure to protect H.M. as to mother's substance abuse, (1) he would be "non-offending" and "it is likely that at disposition the court would not have removed H.M. from father"; and (2) the court would not have required him to attend a substance abuse program. Father cites no evidentiary support for his contention that absent the challenged jurisdictional findings, the court would have changed its dispositional orders.

In crafting a disposition, a juvenile court considers the best interests of the child, and thus may determine custody and include programs to serve those interests and remedy the problems that led to the court's exercise of dependency jurisdiction in the first place. (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1182 ["Thus, whether the parents could understand Rodger's medical needs tended to explain why they were unable to properly meet those needs. Similarly, the transportation problems affected Rodger's medical needs because his parents were unable to get him to medical appointments. The housing situation had a similar effect, because the family's frequent moves without a forwarding address made it difficult for the social service agencies to follow up on Rodger's needs."]; see also *In re D.M.* (2015) 242 Cal.App.4th 634, 647 ["At disposition the juvenile court has broad discretion to make 'all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child.' "].)

Substantial evidence supported removing H.M. from mother's and father's care when father lived with mother in the past and was unable to protect H.M.'s sibling from mother's violent conduct.  (See Background, part 2, *ante*.)  With respect to father's challenge to the order requiring him to participate in a substance abuse program, father ignores that at the dispositional hearing, his own counsel requested father be ordered to participate in such a program and submit to drug testing.  He also ignores that the juvenile court could reasonably find it was in H.M.'s best interests he attend such a program given his extended history of substance abuse causing him to lose parental rights over his three other children and suffer a criminal possession conviction.

### B.     Substantial Evidence Supports the Juvenile Court's Removal Order

Father argues there was no substantial evidence to support removing H.M. from his care.  Father also argues the juvenile court could have returned H.M. to father's custody with an order that father not leave H.M. alone with mother.

"We review a dispositional order removing a child from a parent for substantial evidence, ' "keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." ' [Citation.] '[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands.' [Citation.]  In applying this standard of review, 'the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.]

11

We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*In re M.V.* (2022) 78 Cal.App.5th 944, 960.)

Substantial evidence supported H.M.'s removal from mother's and father's care when father continued to live with mother notwithstanding mother's past violent conduct, including threatening in K.M.'s presence to kill herself and maternal grandmother's male companion. Mother also engaged in violent altercations with maternal grandmother in K.M.'s presence. Father did not testify at the dispositional hearing and the record contains no evidence that father could protect H.M. from mother's violent behavior. The fact that father failed in the past to protect K.M. from mother's violent conduct supports the inference he also could not protect H.M., as well as the juvenile court's finding that removal from both parents was necessary.

On appeal, and for the first time, father argues the juvenile court could have ordered he never leave H.M. alone with mother. Father offers *no* evidence to support this argument. There is no evidence father would have agreed to an order that prevented him from leaving H.M. alone with mother because such an order would have seriously impeded his ability to work outside the home, and he does not contend he was seeking remote employment. Additionally, there was no evidence social workers could have monitored mother's and father's compliance with such an order. Further, as a newborn, H.M. would have been unable to provide information as to compliance with an order not to leave her alone with mother thus leaving H.M. all the more at risk.

12

Finally, although father claims he no longer abuses marijuana or drugs, he does not dispute his history of substance abuse causing him to lose parental rights over Daniel D., K.M., and J.D. He similarly fails to address the many missed tests during the reunification period with K.M. and J.D.

The record before the juvenile court thus supports the juvenile court's finding that H.M. would not be safe in his care. Father relies only on evidence favorable to him, which is inconsistent with our standard of review. Additionally, father claimed he " 'barely ha[d] time' " to visit H.M., raising concerns that he also would not have had time to care for both mother's substantial needs and H.M. if H.M. were in his custody.

## C.    Father's Assertion of Violation of the Indian Child Welfare Act Is Moot[1]

ICWA "protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings." (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) Under state law implementing federal ICWA requirements, the juvenile court and DCFS "have an affirmative and continuing duty to inquire whether a child for whom a petition under [Welfare and Institutions Code] Section 300 . . . has been filed, is or may be an Indian child." (Welf. & Inst. Code, § 224.2,

---

[1] We grant respondent's unopposed request to take judicial notice of the juvenile court's order dated April 25, 2024. (See Evid. Code, § 452, subd. (d).) We decline DCFS's request to take judicial notice of an order dated January 23, 2024 because DCFS does not demonstrate its relevance to this appeal.

13

subd. (a).) An " 'Indian child' " is defined as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definition]).

"If a child is removed from parental custody, the county welfare department 'has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' ([Welf. & Inst. Code,] § 224.2, subd. (b).)" (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 998.)

Here, mother and father denied having Indian ancestry. Father represented that no one in his family has Indian ancestry because they are Mexican. Mother also reported no one in her family has Indian ancestry. When the juvenile court inquired further, father repeated he has no Indian ancestry. When asked by the court, mother's counsel indicated mother has no Indian ancestry. In 2016 and 2021, the juvenile court found it had no reason to know H.M.'s siblings and half sibling were Indian children. In June 2023 in the current case, the court found ICWA did not apply.

Subsequently, on April 25, 2024, while this appeal was pending, the juvenile court issued an order requiring mother and father to provide DCFS with contact information for all known and available extended family members and ordering DCFS to interview those family members about whether H.M. is an Indian

14

child.  Because we no longer can provide effective relief, father's ICWA challenge is moot.  (*In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 639.)

In his opening brief, father argues DCFS did not fulfill its statutorily mandated duty to inquire of extended family members about ICWA and the case should "be remanded for a proper ICWA inquiry."  In his reply brief, father concedes the juvenile court ordered the appropriate ICWA inquiry.  Father still requests we vacate the juvenile court's June 2023 finding that ICWA does not apply.  "We see no need to order any ICWA findings vacated because ICWA-related obligations are continuing duties; that means earlier ICWA-related findings are subject to change and no order vacating an earlier finding is necessary here."  (*In re Baby Girl M.*, *supra*, 83 Cal.App.5th at p. 639, fn. 2.)

## DISPOSITION

The jurisdictional and dispositional orders are affirmed. NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.                          WEINGART, J.

15